# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| BRANDON BERNARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:18-cv-01366 |
| NASHVILLE METRO GOVERNMENT, et al., | ) ) ) ) | JUDGE CAMPBELL |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Brandon Bernard, an inmate in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed an application for leave to proceed *in forma pauperis* (IFP). (Doc. No. 2.)

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I.      Application to Proceed IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of

Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. Initial Review of the Complaint

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review

of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

B.  **Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

3

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

Plaintiff sues Nashville police officers Alexander D. Donald and William Vincion, as well as the Nashville Metropolitan Government, based on his arrest on June 5, 2018. On that night, Plaintiff was involved in a brief altercation with William H. Hill when Officer Donald arrived with another officer in a police car. (Doc. No. 1 at 7.) After Hill had grabbed him by the neck and pushed him back, Plaintiff pulled a knife on Hill. But Plaintiff threw the knife away when Officer Donald pulled up. (*Id.*) After getting out of the car and asking Plaintiff what happened, Officer Donald separately questioned Hill before returning to Plaintiff and asking if he "ha[d] anything on him." (*Id.* at 8.) Plaintiff responded that he had some marijuana, which Officer Donald confiscated. (*Id.*) Officer Donald then placed Plaintiff under arrest, stating that Plaintiff would be charged with possession of marijuana and public intoxication. (*Id.*)

When Plaintiff arrived at intake for booking, he was told that the paper provided to intake said he was being charged with "Robbery Class C Felony." (*Id.*) To these officers at intake and to the Commissioner before whom he appeared, Plaintiff maintained that he did not rob Hill and was told by Officer Donald that his only charges would be marijuana possession and public intoxication. (*Id.*) The officers at intake booked him based on the document before them, and the Commissioner stated that if Plaintiff did not commit a robbery he had nothing to worry about. (*Id.*) The robbery charge was ultimately dismissed, after Plaintiff had spent eight days in jail. (*Id.* at 9, 15.) After Plaintiff was released from jail, he was walking by the bus station when he again encountered Hill, who told Plaintiff that Officer Donald had encouraged him to press the robbery charge against Plaintiff. (*Id.* at 9–10.) Plaintiff was told that officers attempted to get Hill to come

4

to court, but Hill declined. (*Id.* at 10.) When Plaintiff saw the arrest report about a month later, it indicated that Plaintiff approached Hill with a knife, rather than pulling the knife after Hill grabbed Plaintiff. (*Id.*)

Plaintiff next alleges that on July 19, 2018, after he had again been arrested and taken to intake for booking, Officer William Vincion was at the intake door and pushed Plaintiff backward, causing Plaintiff to fall. (*Id.* at 11.) Plaintiff had told another officer that he had been hit in the chin by a different individual that day. (*Id.*) He alleges that he got an x-ray while in jail. (*Id.*)

Plaintiff claims that he was falsely arrested and slandered by Officer Donald when he was detained on the robbery charge. (Doc. No. 1 at 12.) He seeks an award of damages against Officer Donald, and against the Metro Nashville government because it employs Officer Donald. (*Id.*) Finally, Plaintiff seeks damages against Officer Vincion for police abuse and pain and suffering. (*Id.* at 14.)

**D.     Analysis**

Although Plaintiff invokes the Fifth and Sixth Amendments to the U.S. Constitution in seeking to recover for "false report, false arrest, false imprisonment, kidnapping, harassment, [and] slander" (Doc. No. 1 at 7), it is the Fourth Amendment that "establishes the minimum constitutional standards and procedures . . . for arrest [and] for ensuing detention." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017) (citation and internal quotation marks omitted). Generally, Fourth Amendment seizures are reasonable "only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013). A false arrest claim under federal law therefore requires a plaintiff to allege and prove that he was arrested without probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005)). Post-arrest detention can also

violate the Fourth Amendment "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements," resulting in confinement without constitutionally adequate justification. *Manuel*, 137 S. Ct. at 918.

Plaintiff essentially alleges that Officer Donald did not have probable cause to arrest him for robbery. He further alleges that he was unjustly detained on that charge for eight days after his appearance before the Commissioner, who accepted Officer Donald's false statement in the arrest report that Plaintiff approached Hill with a knife, rather than pulling the knife after Hill grabbed Plaintiff. (Doc. No. 1 at 8–9.) To plausibly allege that Officer Donald lacked probable cause to arrest him, Plaintiff must allege that, at the moment of the arrest, Donald lacked knowledge of facts sufficient to warrant a prudent person's belief that an offense had been committed. *Sykes*, 625 F.3d at 306. While the complaint suggests that Donald did not know enough facts to support Plaintiff's arrest for robbery, the Supreme Court has "repeatedly explained" that the facts supporting probable cause to arrest do not have to correspond with the arresting officer's subjective reason for making the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Indeed, the Court in *Devenpeck* held that the facts establishing probable cause to arrest do not have to be closely related to either "the offense identified by the arresting officer at the time of arrest" or "the offense given by the officer at booking." *Id.* at 153 & n.2. Put simply, "[t]hose are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 155.

Here, Plaintiff alleges that Officer Donald "pull[ed] up" to the scene near the entrance to a parking lot when Plaintiff was brandishing a knife at Hill, and that by the time Donald got out of his car Plaintiff had thrown the knife "in the grass by the park[ing] lot pay machine." (Doc. No. 1 at 7.) He further alleges that he told Officer Donald that he was in possession of marijuana, which Officer Donald then confiscated. (*Id.* at 8.) Plainly, these facts established probable cause to place

6

Plaintiff under arrest. Under *Devenpeck*, the fact that Plaintiff was (1) charged with robbery after being told that he was arrested for marijuana possession and public intoxication and (2) detained on the robbery charge for eight days until its dismissal when Hill declined to press the charge in court, do not give rise to any Fourth Amendment claim for false arrest or imprisonment against Officer Donald, nor any common law claim for slander. *See Pierson v. Ray*, 386 U.S. 547, 555 (1967) ("[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.").

Plaintiff's remaining allegations also fail to support any viable claim to relief. Even if a false arrest claim were stated against Donald, his employer, the Metro Nashville government, would not be subject to liability simply because of that employment relationship. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Nor is a viable excessive force claim stated by the bare allegation that Officer Vincion "push[ed] [Plaintiff] back and [caused] [him] to fall." (Doc. No. 1 at 11.) While pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause from excessive force that amounts to punishment, such a claim must be based on something more than *de minimis* force. *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008). Plaintiff alleges that Vincion pushed him on one occasion. He does not allege any injury resulting from his fall. Accordingly, the Court finds that the alleged use of force was *de minimis* and fails to give rise to a federal cause of action. *See id.*

## III. Conclusion

For the reasons given above, Plaintiff's application to proceed IFP (Doc. No. 2) is **GRANTED**, and the complaint is **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

This is the final order in this action. The Clerk **MUST** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE